UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | |
| MICHAEL C. JAMES, ) | Bankruptcy No. 08 B 17044 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| MICHAEL C. JAMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 08 A 01018 |
| ) | |
| CADILLAC COMPANY INC. ) | |
| A/K/A CADILLAC PROPERTIES, INC. and ) | |
| CHASE HOME BANK USA, N.A. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of defendant Cadillac Company, Inc. ("Cadillac") for summary judgment pursuant to Federal Rule of Civil Procedure 56, applicable herein by virtue of Federal Rule of Bankruptcy Procedure 7056, on the amended adversary complaint ("Amended Complaint") filed by plaintiff, Michael C. James ("James" or "Debtor") pursuant to Federal Rule of Bankruptcy Procedure 7001(2). The Amended Complaint seeks a determination of the validity, priority, and extent of liens on Debtor's residence. For the reasons set forth below, Cadillac's motion for summary judgment will be denied.

**Jurisdiction and venue.**

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157, referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This proceeding involves a determination of the validity, extent, and priority of liens and is therefore a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

**Facts and background.**

The following facts are undisputed or have been deemed admitted pursuant to Local Bankruptcy Rule 7056-2(B). Debtor and his wife, Robin James, are the co-owners of their residence, located at 4537 S. LeClaire, Chicago IL 60638. (Bankr. Docket No. 11, "Schedule A"; Answer to Am. Compl. ¶ 8) On August 2, 2005, Chase Bank USA, N.A. ("Chase") recorded a mortgage against Debtor's residence in the amount of $186,000. (Am. Compl., Exh. A; 7056-1 Statement ¶ 9) Several months later, on December 22, 2005, Debtor entered into a written contract with Father & Sons Contractors, Inc. ("FSC") for remodeling work to be performed on his residence. (Answer to Am. Compl ¶ 10; 7056-1 Statement, Exh.'s B & C.) The cost of the remodeling was originally estimated to be about $16,000. (Answer to Am. Compl. ¶ 11)

On January 14, 2006, Debtor executed a note and mortgage ("Mortgage A") to defendant Cadillac "in connection with financing a home improvement contract for the debtor's residence." (7056-1 Statement ¶¶ 1-2.) Mortgage A, in the amount of $16,400, was recorded with the Cook County Recorder of Deeds on January 20, 2006. (*Id.* at ¶ 3; Answer to Am. Compl ¶ 13) On

January 30, 2006, a release deed listing "Candice Co., Inc" ("Candice") as releasor and releasing Mortgage A (the "Candice Release") was recorded against Debtor's residence. (Am. Compl. Exh. D; Answer to Am. Compl. ¶ 19.) The Candice Release was prepared by Attorney Colin Lawler ("Lawler"). (Am. Compl. Exh. D; Answer to Am. Compl. ¶ 20.) Two days prior to the recording of the Candice Release, on January 28, 2006, Debtor and his wife had executed and delivered a mortgage to Cadillac ("Mortgage B") in the amount of $18,319.85. (Am. Compl. Exh. C; Answer to Am. Compl. ¶ 17.) Debtor's signatures on both Mortgage A and Mortgage B were notarized by Cadillac's president, Donna Dibrito ("Dibrito'). (Answer to Am. Compl. ¶¶ 15,18.)

On January 31, 2006, the day after the recording of the Candice Release and three days after the execution of Mortgage B, Debtor sent an executed "Notice of Right to Cancel" to Cadillac. (Am. Compl., Exh. E; Answer to Am. Compl. ¶ 21.) The Notice stated, in pertinent part:

> <u>Your Right to Cancel</u>
> You are entering into a transaction that will result in a security interest in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:
> 1. The date of the transaction, which is <u>January 28, 2006</u>; or
> 2. The date you received this notice of your right to cancel.
> If you cancel the transaction, the security interest is also cancelled. ...
> <u>How To Cancel</u>:
> If you decide to cancel this transaction, you may do so by notifying us, in writing at:
> <u>Cadillac Co., Inc. P.O. Box# 357, Lyons, Ill. 60534-0357</u>
> You may use any written statement that is signed and dated by you and state your intention to cancel, and/or you may use this notice by dating and signing below. ...

(Am. Compl., Exh. E) (emphasis in original). Debtor signed and dated the form and mailed it to

3

Cadillac on January 31, 2006. *Id.*

On March 10, 2006, Cadillac recorded with the Cook County Recorder of Deeds a release deed for Mortgage B, prepared by Lawler and notarized by Dibrito. (Am. Compl., Exh. G ; Answer to Am. Compl. ¶¶ 24, 25) However, on the same day, Cadillac also re-recorded Mortgage A. (7056-1 Statement ¶ 4 and Exh. A, p. 2.)

Approximately two weeks later, on March 22, 2006, Debtor entered into a settlement agreement with FSC to resolve disputes that had arisen concerning the home remodeling contract. (7056-1 Statement ¶ 5). The March 22, 2006 settlement agreement required payment of "the total contractual sum" of $16,000. (7056-1 Statement, Exh. B at ¶ 5) The $16,000 was to be paid "as set forth in the home improvement loan identified as Cadillac Co., Inc. loan no. S 1020 signed on January 20, 2006 by [Debtor and his wife] in the sum of $16,400." (*Id.*)

Thereafter, on July 5, 2006, FSC filed suit against Debtor in the Circuit Court of Cook County, Case No. 06 M1 149826, for breach of the March 22, 2006 settlement agreement. (7056-1 Statement ¶ 7 and Exh. C) FSC alleged that Debtor and his wife had failed to make any of the payments required thereby. (7056-1 Statement, Exh. C at ¶ 9)

On or about February 13, 2007, Debtor granted a mortgage to Chase in the amount of $222,700. (Answer to Am. Compl. ¶ 22) Chase recorded its $222,700 mortgage against Debtor's residence on March 19, 2007. (Am. Compl. Exh. H; 7056-1 Statement ¶ 8) Two days later, on March 21, 2007, Chase released its earlier, $186,000 mortgage on Debtor's residence. (Am. Compl., Exh. I; 7056-1 Statement ¶ 9)

On or about April 17, 2007, an "Agreed Order" was entered by the Circuit Court of Cook County dismissing Case No. 06 M1 149826 and retaining jurisdiction to enforce a new

settlement agreement entered into by FSC and Debtor on April 13, 2007 (the "April 13 Settlement Agreement"). (7056-1 Statement, Exh.'s D and E) The April 13 Settlement Agreement required Debtor and his wife to make payments "to Cadillac (or to any party Cadillac designates) subject to all the terms of the note executed on January 14, 2006 between the parties in the total sum of $16,400.00 ..." (7056-1 Statement, Exh. D at p. 2) The April 13 Settlement Agreement further stated:

> Robin James & Michael James, on behalf of himself, his agents, servants, employees, attorneys, successors and assigns, hereby fully release and discharge Cadillac Co. Inc., its subcontractors, agents, servants, stockholders, employees, employers, sureties, insurers, representatives, attorneys, successors, and assigns, **from and against all claims, demands, actions, and causes of action** of any kind and nature, existing, claimed to exist, or which can hereafter ever arise including but not limited to any or all that arise out of or result from or in connection with any note or mortgage executed by and/or between Robin James & Michael James and Cadillac Co., Inc.

(*Id.* at p. 3) (emphasis in original)

On February 5, 2008, FSC filed a motion with the Circuit Court to enforce the April 13 Settlement Agreement. (7056-1 Statement, Exh. E) The Court entered judgment in favor of FSC and against Debtor and his wife in the sum of $19,761.98. (7056-1 Statement, Exh. F)

On July 1, 2008, Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. FSC was listed as an unsecured creditor holding a disputed claim in the amount of $20,446. (Bankr. Docket No. 11, Schedule F) Debtor's schedules list Chase as holding a mortgage on Debtor's residence in the amount of $225,000. (Bankr. Docket No. 11, Schedule D) On August 5, 2008, Chase Home Finance LLC filed a proof of claim for the unpaid balance of its mortgage in the amount of $222,945.45, later amended to $223,047.84.

(Bankruptcy Court Claims Register, Claim No. 4).

Debtor did not list Cadillac as a creditor in his schedules, and Debtor's chapter 13 plan does not provide for any payment to Cadillac. (Bankr. Docket Nos. 11 and 31) Cadillac filed an objection to the confirmation of Debtor's plan, as well as a proof of claim for "$22,581.66 + atty fees," designating the claim as secured for the full amount. (Bankr. Docket No. 32; Bankruptcy Court Claims Register, Claim No. 6) Cadillac argues that its claim is fully secured by Mortgage A, recorded prior to the March 19, 2007 recording of Chase's $222,700 mortgage. Debtor maintains that Cadillac is not a secured creditor because, *inter alia*, Mortgage A lacked consideration and was properly rescinded. According to Debtor, Mortgage A was fraudulently re-recorded by Cadillac in order to obtain a secured position during Debtor's dispute with FSC.

## Debtor's adversary complaint and the parties' contentions.

On December 17, 2008, Debtor filed the instant adversary proceeding against "Candice Company, Inc. a/k/a Cadillac Company Inc.," seeking a determination that the defendant's lien was invalid. Cadillac filed an answer to the complaint, affirmatively stating that it is a separate legal entity from Candice and denying that it does business as or is otherwise known as Candice Company Inc.

On July 9, 2009, Debtor filed an amended complaint against Candice, Cadillac, and Chase. Candice filed a motion to dismiss, contending that it does not have an interest in Debtor's residence. An order was ultimately entered granting the motion to dismiss. On July 30, 2009, Cadillac filed an answer to the Amended Complaint, denying many of its factual allegations.

6

In the Amended Complaint, Debtor seeks a determination that Cadillac's mortgage in the amount of $16,400 (Mortgage A) is invalid, pursuant to theories of lack of consideration, fraud in the inducement, and rescission. Debtor also asserts that Cadillac's purported lien is subordinate in any event to the mortgage recorded by Chase on March 19, 2007. According to Debtor, that mortgage is entitled - - under the doctrine of equitable subrogation - - to the priority of Chase's original ($186,000) mortgage.[1]

Specifically, Debtor alleges that Cadillac, through its affiliate FSC, solicited and induced Debtor to enter into the home remodeling contract with FSC by promising financing for the project. Debtor alleges that Cadillac falsely represented it would disburse funds to FSC in consideration of the mortgage granted by Debtor, and Debtor signed both Mortgage A and Mortgage B in reliance on Cadillac's representation. Debtor further alleges that Cadillac never paid any funds either to FSC or to Debtor and that as a result, FSC filed a breach of contract action against Debtor for the full contract balance.

In connection with both Mortgages A and B, Debtor asserts that Cadillac failed to disclose its affiliation with FSC; failed to provide Debtor with a loan application, a HUD-1 closing statement, or a Good Faith Estimate on his home as required by the Federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 ("RESPA"); and failed to hold a closing with Debtor in connection with the transaction. In addition, Debtor alleges that at the time he signed both mortgage documents, Cadillac was not licensed by the State of Illinois to engage in mortgage brokering or lending as required by the Illinois Residential Mortgage Act.

---

[1] While the amended complaint contains allegations concerning the priority of the Chase mortgage, there is no request for a determination as to such priority in the Debtor's prayer for relief.

Debtor further contends that the release of Mortgage A recorded on January 30, 2006 appeared to be a valid release recorded by Cadillac under the alias of "Candice Co. Inc." Debtor notes that the release was prepared by Lawler and notarized by Dibrito - - the same individuals who prepared and notarized Mortgage A, Mortgage B, and Cadillac's release of Mortgage B recorded on March 10, 2006. In addition, Debtor contends that the entire transaction with Cadillac, including both Mortgage A and Mortgage B, was rescinded by the Notice of Right to Cancel sent to Cadillac on January 31, 2006. Debtor maintains that the rescission terminated all of Cadillac's security interest in Debtor's residence and that Cadillac's re-recording of Mortgage A, after receiving the notice of cancellation, was therefore fraudulent.

The parties do not dispute that Mortgage B was properly released on March 10, 2006. Cadillac, however, alleges that Debtor "reaffirmed" Mortgage A and denies that Mortgage A was ever rescinded or released. According to Cadillac, the release recorded on January 30, 2006 was an erroneous attempt to release Mortgage A by Candice, a separate legal entity. As for Debtor's remaining allegations, Cadillac admits, *inter alia*, that it had a business relationship with FSC but denies any wrongful conduct in connection with its mortgages on Debtor's residence.

With respect to the Chase mortgage, Debtor notes that Chase obtained its original lien on Debtor's residence on August 2, 2005, prior to Cadillac's alleged lien on the property. Debtor contends that Chase maintained a valid, first priority position through its mortgage recorded on March 19, 2007, because it was a refinancing mortgage and was therefore subrogated to Chase's original lien and corresponding priority position.

**Cadillac's motion for summary judgment.**

On July 30, 2009, Cadillac filed the instant motion for summary judgment, contending that Debtor had released Cadillac of any and all claims asserted in the Amended Complaint. According to Cadillac, it is a third party beneficiary of the April 13 Settlement Agreement with FSC and thus has standing to enforce Debtor's release of claims. Cadillac further argues that the equitable doctrine of subrogation does not apply to Chase's $222,700 mortgage recorded on March 19, 2007. According to Cadillac, the mortgage is not a "refinance" mortgage, because Chase did not merely use the proceeds thereof to pay off its original mortgage; rather, Chase increased the amount of its lien to account for an increase in the value of the property.

**Applicable standards for summary judgment.**

In order to prevail on a motion for summary judgment, the movant must meet the criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, applicable herein by virtue of Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part as follows:

> The judgment sought should be rendered if the pleadings,
> the discovery and disclosure materials on file, and any
> affidavits show that there is no genuine issue as to any
> material fact and that the movant is entitled to judgment
> as a matter of law.

Fed.R.Civ.P. 56(c). The primary purpose of the summary judgment procedure is to avoid unnecessary trials where no genuine issues of material fact are in dispute. *See Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmens Fed. Savs. & Loan Ass'n*

*of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Brhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

It is the moving party's burden to show that no genuine issue of material fact is in dispute. *See, e.g., Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 (7th Cir. 1994). All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *See, e.g., Roger Whitmore's Automotive Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 666-67 (7th Cir. 2005). "[S]ummary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990).

The "party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 56(c)). The manner in which the moving party can make this initial showing depends upon which party will bear the burden of persuasion at trial. *See Union Nat'l Bank of Marseilles v. Leigh (In re Leigh)*, 165 B.R. 203, 213 (Bankr. N.D. Ill. 1993). If the burden of persuasion would be on the non-moving party, the summary judgment movant may satisfy the Rule 56 burden of production either by submitting affirmative evidence that negates an essential element of the non-moving party's claim or by showing that the non-moving party's

10

evidence is insufficient to establish an essential element of his claim. *Id.* Once the moving party satisfies its initial burden of production, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex,* 477 U.S. at 324; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Outlaw v. Newkirk,* 259 F.3d 833, 837 (7th Cir. 2001).

Under Local Bankruptcy Rule 7056, a motion for summary judgment imposes special procedural burdens on the parties. Specifically, the rule requires the moving party to supplement its motion and supporting memorandum with a statement of undisputed material facts ("7056-1 Statement"). The 7056-1 Statement "must consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 7056-1(B). Cadillac filed a 7056-1 Statement that substantially complies with these requirements of Local Rule 7056. It contains numbered paragraphs setting out assertedly uncontested facts with specific references to parts of the record. Cadillac also relies upon and has furnished other supporting materials, within the contemplation of the rule.

The party opposing a summary judgment motion is required by Local Rule 7056-2 to respond (a "7056-2 Statement") to the movant's 7056-1 Statement, paragraph by paragraph, and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each such denial. The opposing party is

11

required to respond "to each numbered paragraph in the moving party's statement" and to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" Local Bankr.R. 7056-2A(2)(a). Most importantly, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 7056-2(B). Debtor did not file the requisite 7056-2 Statement.

"Compliance with Local Rules 7056-1 and 7056-2 is not a mere technicality." *In re Basel-Johnson*, 366 BR. 831, 841 (Bankr N.D .Ill. 2007). The Seventh Circuit has upheld strict application of local summary judgment rules. *See F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) ("Because of the important function local [summary judgment] rules ... serve in organizing the evidence and identifying disputed facts, we have consistently upheld the ... court's discretion to require strict compliance with those rules.") *See also Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1140 (7th Cir.1997); *Feliberty v. Kemper Corp.*, 98 F.3d 274, 277-78 (7th Cir. 1996). The statements required by such rules

> are intended to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own.

*Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Because Debtor has failed to comply with Local Rule 7056-2(A), the facts set forth in Cadillac's 7056-1 Statement are deemed admitted. The deemed admission of facts does not, however, mean that Cadillac is necessarily entitled to summary judgment. As noted by the

Seventh Circuit:

> Even if the opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only " *if appropriate-* that is, if the motion demonstrates that there is no genuine issue of material fact *and* that the movant is entitled to judgment as a matter of law."

*Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (quoting from *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993)) (emphasis in original).

In this case, the limited facts provided in Cadillac's 7056-1 Statement and supporting documents do not provide this court with the requisite roadmap for determining that there are no genuine issues of fact for trial. As discussed further below, Cadillac has failed to negate any essential element of Debtor's claims or to demonstrate that Debtor's evidence is insufficient to establish an essential element of his claims. Thus, Cadillac has failed to show that it is entitled to summary judgment as a matter of governing law.

**Discussion.**

Debtor argues, *inter alia*, that there are questions of fact as to the validity *vel non* of Mortgage A, re-recorded by Cadillac on March 10, 2006. State law governs the security interests asserted by parties in bankruptcy. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law.... The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests...."); *Worthen Bank & Trust Co., N.A. v. Hilyard Drilling Co., Inc. (In re Hilyard Drilling Co., Inc.)*, 840 F.2d 596, 599 n. 4 (8th Cir.1988) (citing *In re Chaseley's Foods, Inc.*, 726 F.2d 303, 307 (7th Cir.1983)). Thus, the Court "look[s] to state law to ascertain what

13

property the debtor owned immediately preceding the time of bankruptcy; what liens thereon, if any, then existed; the character thereof; and the order of priority among the respective creditors holding such liens." *Commercial Credit Co. v. Davidson ( In re Chancellor)*, 112 F.2d 54, 55 (5th Cir. 1940). Accordingly, the extent, validity, and priority of Cadillac's alleged lien on Debtor's residence is determined by state law. In this matter, it is undisputed that Illinois is the applicable state law.

Again, Debtor contends that Mortgage A is invalid due to a lack of consideration, rescission, and fraud in the inducement. Under Illinois law, "[a] mortgage is security for a debt and without a debt it has no effect as a lien." *Peterson Bank v. Langendorf,* 136 Ill.App.3d 537, 539, 90 Ill.Dec. 961, 483 N.E.2d 279 (1985) (internal citations and quotations omitted). The lien arises "only when money is advanced or the contemplated debt comes into existence ...," and it is "measured by the extent of the advances and the amount of the debt." *Id.* "[C]onsideration for a mortgage may consist of either some interest, a right, or benefit conferred to the mortgagor, or some forbearance, detriment, loss or responsibility, given suffered or undertaken by the mortgagee." *Codo v. Union Nat. Bank & Trust Co. of Joliet,* 54 Ill.App.3d 810, 812, 12 Ill.Dec. 517, 370 N.E.2d 140, 142 (1977). The consideration "need not move directly from the mortgagee to the mortgagor and may consist of a loan to a third person." *State Bank of Geneva v. Sorenson,* 167 Ill.App.3d 674, 684, 118 Ill.Dec. 305, 521 N.E.2d 587, 594 (1988) (citations omitted). The burden of proving a lack of consideration for a mortgage is upon the party asserting it. *Codo,* 370 N.E.2d at 142. The validity of the consideration "must be evaluated as it relates to the entire record and not as perceived in a vacuum of either terms or definitions." *Codo,* 370 N.E.2d at 143 (citations omitted). Parol evidence of the parties' intentions is

14

admissible where a party alleges lack of consideration or fraud. *Land of Lincoln Sav. & Loan v. Michigan Ave. Nat'l Bank of Chi.*, 103 Ill.App.3d 1095, 1101, 59 Ill.Dec. 794, 432 N.E.2d 378, 383 (1982).

Fraud in the inducement of a contract is a defense which renders the contract voidable at the election of the innocent party. *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill.App.3d 1019, 1030, 309 Ill.Dec 686, 864 N.E.2d 927, 939 (2007). The perpetrator of the fraud cannot enforce a voidable contract and the innocent party may either seek to rescind the contract or choose to waive the defect, ratify the contract, and enforce it. *Id.* The party seeking to establish fraud in the inducement of a contract must establish that there was: (1) a representation in the form of a material fact; (2) known or believed to be false by the party making it, but reasonably believed to be true by the other party; (3) made for the purpose of inducing the other party to act; and (4) relied upon by the party to whom it was made to his detriment. *Id.* The omission or concealment of a material fact when one has the opportunity and duty to speak may also amount to a fraudulent misrepresentation. *Havaco of America, Ltd. v. Sumitomo Corp. of America*, 971 F.2d 1332, 1341 (7th Cir. 1992). "Intent to defraud is a question of fact, which may be proved by circumstantial evidence and inferred from the facts and circumstances surrounding the transaction." *People v. Aguilar*, 366 Ill.App.3d 341, 344, 303 Ill.Dec. 610, 851 N.E.2d 797 (2006).

Finally, rescission is generally defined as "the cancelling of a contract so as to restore the parties to their initial status." *Puskar v. Hughes*, 179 Ill.App.3d 522, 528, 127 Ill.Dec. 880, 533 N.E.2d 962, 966 (1989). When a contract is rescinded, the party's rights under that contract are vitiated or invalidated. *Id.*

With respect to rescission, Debtor argues that the Notice of Right to Cancel was intended to cancel Debtor's entire transaction with Cadillac, including both Mortgages A and B. In fact, the Notice itself states: "If you cancel the transaction, the security interest is also cancelled." Debtor further notes that at the time the notice of cancellation was transmitted, the Candice Release had already been recorded with respect to Mortgage A.

Cadillac does not address the rescission issue in its brief - - or indeed, any of the other claims raised by Debtor - - and its Rule 7056-1 Statement fails to include facts that would tend to negate Debtor's claims. Instead, Cadillac relies entirely upon the release of claims included in the April 13 Settlement Agreement. According to Cadillac, it is a third party beneficiary of the settlement agreement and has standing to enforce the release.

Under Illinois law, there is a strong presumption against conferring contractual rights on third parties. *Quinn v. McGraw-Hill Cos., Inc.*, 168 F.3d 331, 334 (7th Cir.1999); *Estate of Willis v. Kiferbaum Constr. Corp.*, 357 Ill.App.3d 1002, 294 Ill.Dec. 224, 830 N.E.2d 636, 642 (2005); *see also Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill.App.3d 1017, 1020, 329 Ill.Dec 82, 905 N.E.2d 920, 924 (2009) ("[t]here is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties") (*citing Barney v. Unity Paving, Inc.*, 266 Ill.App.3d 13,19, 203 Ill.Dec. 272, 639 N.E.2d 592, 596 (1994)). "Whether someone is a third-party beneficiary depends on the intent of the contracting parties as evidenced by the contract language." *Martis*, 905 N.E.2d at 924) (*citing F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 372 Ill.App.3d. 89, 96, 309 Ill.Dec. 865, 865 N.E.2d 228, 235 (2007)). "It must appear from the language of the contract that the contract was made for the direct, not merely incidental, benefit of the third person." *Martis*, 905 N.E.2d at

924 (citing *Gallager Corp. v. Russ*, 309 Ill.App.3d 192, 200, 242 Ill.Dec. 326, 721 N.E.2d 605, 612 (1999)). "A third party is a direct ... beneficiary when the contracting parties have manifested in their contract an intention to confer a benefit upon the third party." *Ball Corp. v. Bohlin Bldg. Corp.*, 187 Ill.App.3d 175, 134 Ill.Dec. 823, 543 N.E.2d 106, 107 (1989). The party claiming to be a third party beneficiary bears the burden of showing that the parties to the contract intended to confer a direct benefit on it. *Martis*, 920 N.E.2d at 924.

Cadillac has failed to demonstrate the absence of a genuine issue of fact material to its claimed third-party beneficiary status. While the April 13 Settlement Agreement does include, in ¶ 4, the release language quoted above, it also states in ¶ 17: "No third party rights are intended, nor shall any be deemed to arise, under and by virtue of this Agreement, which is intended for the benefit of the Parties to it and no others." (7056-1 Statement, Exh. D at p. 1)[2]

"Contradictory language in a contract is classically ambiguous." *Universal Guaranty Life Ins. Co. v. Coughlin*, 481 F.3d 458, 464 (7th Cir. 2007). The question of whether an ambiguity exists "turns largely on whether the contract language is 'reasonably susceptible to more than one meaning' ... ." *Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) (quoting from *Susmano v. Associated Internists of Chi., Ltd.*, 97 Ill.App.3d 215, 52 Ill.Dec. 670, 422 N.E.2d 879, 882 (1981)). The contract should be construed as a whole, with each section viewed in the light of the others. *Curia*, 587 F.3d at 829 (citing *Gallagher v. Lenart*, 226 Ill.2d 208, 314 Ill.Dec. 133,

---

[2]  The term "Parties" is defined in the agreement as including only "FSC," Debtor, and his wife. (7056-1 Statement, Exh. D at p. 1) "FSC" is in turn defined as including only Father & Sons Contractors, Inc. *Id.* Although the agreement recites that FSC "enters this agreement on behalf of themselves and any parent, subsidiary, affiliated or successor entity, their employees, their officers, their shareholders, their agents, their insurers, and each of them, separately and collectively," the affiliates and other related parties are not signatories to the agreement and, again, are not included in the term "Parties." *Id.*

Case 08-01018   Doc 36   Filed 03/03/10   Entered 03/03/10 17:54:22   Desc Main
                       Document     Page 18 of 19

874 N.E.2d 43, 58 (2007)). As the Seventh Circuit has stated:

> In construing contracts, to determine their intent, it is long established that a construction should be adopted, if possible, which ascribes meaning to every clause, phrase and word used; which requires nothing to be rejected as meaningless, or surplusage; which avoids the necessity of supplying any word or phrase that is not expressed; and which harmonizes all the various parts so that no provision is deemed conflicting with, or repugnant to, or neutralizing of any other. ... But if the contract is ambiguous, its construction is then a question of fact, and parol evidence is admissible to explain and ascertain what the parties intended.

*Curia*, 587 F.3d at 829 (internal quotations and citations omitted).

In light, *inter alia*, of the apparent conflict between ¶¶ 4 and 17 of the April 13 Settlement Agreement, there is an ambiguity as to Cadillac's asserted third-party beneficiary status, and parol evidence is admissible to explain what the parties intended. Cadillac has thus failed to establish that there are no genuine issues of material fact with respect to the release. It has further failed to either submit affirmative evidence that negates an essential element of Debtor's claims or to demonstrate that Debtor's evidence is insufficient to establish an essential element of his claims.[3] Accordingly, summary judgment must be denied.

---

[3] As material issues of fact remain to be tried with respect, *inter alia*, to the validity of Cadillac's alleged lien, it would be premature to address Cadillac's further contention concerning the priority of that lien over the mortgage held by Chase.

**Conclusion.**

For all of the reasons set forth above, Cadillac's motion for summary judgment will be denied. A separate order will be entered concurrent herewith.

Dated: 3/3/2010　　　　　　　　　　ENTER:

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Susan Pierson Sonderby
　　　　　　　　　　　　　　　　　　United States Bankruptcy Judge